UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
CARLOS RODRIGUEZ and YERSON FERNANDEZ GARCIA, on behalf of themselves, individually, and all other similarly situated persons,

Plaintiffs,

-against-

WSAF INC., SLEEPY HOLLOW HOTEL AND CONFERENCE CENTER LLC d/b/a SLEEPY HOLLOW HOTEL, IGOR ALTERMAN, SHLOMO SUCHARD and LINDA FERONE,

Defendants.
----------------------------------------------------------------------X

**AMENDED COMPLAINT**

*Class and Collective Actions*

Plaintiffs Carlos Rodriguez and Yerson Fernandez Garcia, on behalf of themselves, individually, and all other similarly situated persons, by and through their counsel, the Romero Law Group PLLC, complaining of the Defendants WSAF Inc., Sleepy Hollow Hotel and Conference Center LLC d/b/a Sleepy Hollow Hotel, Igor Alterman, Shlomo Suchard and Linda Ferone (collectively as "Defendants"), allege as follows:

## NATURE OF THE CLAIM

1. Plaintiffs bring this action to recover unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law, Articles 6 and 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including 12 N.Y.C.R.R. § 146 ("NYLL"), unpaid spread of hours compensation under the NYLL and 12 N.Y.C.R.R. § 146-1.6, damages for violations of the prompt payment requirement of the FLSA, damages for failure to issue timely payment of wages pursuant to NYLL §§ 191, 198, damages for failure to furnish accurate wage statements for each pay period under NYLL § 195(3), damages for failure to provide a wage notice upon their hire under NYLL § 195(1), unlawful deductions

from wages earned under NYLL § 193, damages for unjust enrichment under New York common law, and damages for retaliation under the FLSA, NYLL and NYLL § 740, and any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiffs bring this lawsuit against the Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other similarly-situated persons during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA. Plaintiffs brings their Third through Seventh Claims for Relief under the NYLL on behalf of themselves, individually, and on behalf of any FLSA Collective Action Plaintiff, as that term is defined below, who opts-in to this action.

3. Plaintiffs also bring their Third through Seventh Claims for Relief as a class action pursuant to Federal Rules of Civil Procedure 23, on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable limitations periods who suffered damages as a result of the Defendants' violations of these claims under the NYLL and the supporting New York State Department of Labor regulations.

4. Managers and others with executive positions, who are paid fixed salaries, are not members of the class that Plaintiffs seek to represent in this action.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under 29 U.S.C. § 201, *et seq*. and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of New York.

**THE PARTIES**

7. At all relevant times, Plaintiff Carlos Rodriguez ("Rodriguez") is and was a resident of the County of Westchester, State of New York.

8. At all relevant times, Plaintiff Rodriguez was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e), NYLL § 190(2), and NYLL § 740(1)(a), and a "manual worker" within the meaning of NYLL § 190(4).

9. At all relevant times, Plaintiff Yerson Fernandez Garcia ("Fernandez") is and was a resident of the County of Westchester, State of New York.

10. At all relevant times, Plaintiff Fernandez was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e), NYLL § 190(2), and NYLL § 740(1)(a), and a "manual worker" within the meaning of NYLL § 190(4).

11. At all relevant times, Defendant WSAF Inc. is and was a domestic business corporation with its principal place of business at 1325 Pennsylvania Ave., Apt. 20E, Brooklyn, New York 11239 and a business address at 455 South Broadway, Tarrytown, New York 10591.

12. At all relevant times, Defendant WSAF Inc. is and was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to the use of food and ingredients, kitchenware, utensils, tables, chairs, banquet and catering equipment, events supplies, hotel bedding, cleaning supplies, office supplies, phones, receipt

papers, pens, and paper, all or much of which undoubtably traveled in interstate commerce, and accepted payment from credit card machines, banks and other moneys that originated from out of New York State.

13. At all relevant times, Defendant WSAF Inc. is and was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3), and NYLL § 740(1)(b).

14. At all relevant times, Defendant WSAF Inc. employed more than eleven employees at any given time.

15. At all relevant times, Defendant Sleepy Hollow Hotel and Conference Center LLC d/b/a Sleepy Hollow Hotel ("Sleepy Hollow Hotel") is and was a domestic business corporation with its principal place of business and its business address at 455 South Broadway, Tarrytown, New York 10591.

16. At all relevant times, Defendant Sleepy Hollow Hotel is and was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to use of food and ingredients, kitchenware, utensils, tables, chairs, banquet and catering equipment, events supplies, hotel bedding, cleaning supplies, office supplies, phones, receipt papers, pens, and paper, all or much of which undoubtably traveled in interstate commerce, and accepted payment from credit card machines, banks and other moneys that originated from out of New York State.

17. At all relevant times, Defendant Sleepy Hollow Hotel is and was is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), NYLL § 190(3), and NYLL § 740(1)(b).

18. At all relevant times, Defendant Sleepy Hollow Hotel employed more than eleven employees at any given time.

19. At all relevant times, Defendant Igor Alterman is and was an shareholder and/or officer for Defendant WSAF Inc., as well as a manager for WSAF Inc., was active in the day to day management of WSAF Inc., including directing Plaintiffs and WSAF's and Alterman's (collectively as "WSAF") other employees regarding their duties, being responsible for the payment of Plaintiffs' and WSAF's other employees' wages, determining what wages were paid to Plaintiffs and WSAF's other employees, had the power to hire, fire and discipline employees, had authority to make all personnel decisions, was responsible for maintaining personnel records relating to Plaintiffs' and WSAF's other employees' employment, and is liable to Plaintiffs and WSAF's employees as an "employer" within the meaning of the FLSA, NYLL, and NYLL § 740(1)(b).

20. At all relevant times, Defendant Shlomo Suchard is and was the "Owner's Representative" and/or General Manager for Defendant Sleepy Hollow Hotel, was active in the day to day management of Sleepy Hollow Hotel and WSAF Inc., including directing Plaintiffs and other WSAF employees regarding their duties, being responsible for the payment of wages for Sleepy Hollow Hotel, had the power to hire, fire and discipline employees of Sleepy Hollow Hotel, had authority to make personnel decisions for Sleepy Hollow Hotel, Plaintiffs and other WSAF employees, was responsible for maintaining personnel records for employees of Sleepy Hollow Hotel, Plaintiffs and other WSAF employees, and is liable as an "employer" within the meaning of the FLSA, NYLL, and NYLL § 740(1)(b).

21. At all relevant times, Defendant Linda Ferone is and was the General Manager for Defendant Sleepy Hollow Hotel, was active in the day to day management of Sleepy Hollow Hotel

and WSAF Inc., including directing Plaintiffs and other WSAF employees regarding their duties, being responsible for the payment of wages for Sleepy Hollow Hotel, had the power to hire, fire and discipline employees of Sleepy Hollow Hotel, had authority to make personnel decisions for Sleepy Hollow Hotel, Plaintiffs and other WSAF employees, was responsible for maintaining personnel records for employees of Sleepy Hollow Hotel, Plaintiffs and other WSAF employees, and is liable as an "employer" within the meaning of the FLSA, NYLL, and NYLL § 740(1)(b).

22. At all relevant times, Defendants Shlomo Suchard and Linda Ferone, on behalf of both Sleepy Hollow Hotel and WSAF, among other things, actively supervised Plaintiffs' and other WSAF employees' employment, duties, daily tasks, and day to day management, inspected the quality of their work, instructed them regarding how they wanted them to perform their duties, instructed them regarding any additional work or changes that were necessary to complete their projects, discussed any concerns regarding Plaintiffs' and other WSAF employees' concerns regarding their employment, terms of employment and wages, and communicated with Plaintiffs and other WSAF employees directly in person and/or by phone regarding their employment.

23. At all relevant times, Defendants WSAF, Sleepy Hollow Hotel, Igor Alterman, Shlomo Suchard and Linda Ferone jointly supervised Plaintiffs' employment and other WSAF employees, jointly oversaw Plaintiffs' and other WSAF employees' day-to-day activities, duties, tasks, and scheduling decisions, were all active in the day to day management of their shared business location, and upon information and belief, jointly shared authority to make personnel decisions for Plaintiffs and other WSAF employees, jointly shared authority to discipline and/or counsel Plaintiffs and other WSAF employees regarding their employment, and were both responsible for maintaining personnel records for Plaintiffs and other WSAF employees.

24. Additionally, at all relevant times, Plaintiffs and other WSAF employees were performing services for all Defendants at any given time as the services were mutually provided to all Defendants at all times and for the mutual benefit and interest of all Defendants simultaneously.

25. Upon information and belief, at all relevant times, Defendants WSAF Inc., Sleepy Hollow Hotel, Igor Alterman, Shlomo Suchard and Linda Ferone jointly operated and continue to operate a hotel, catering, banquet and events facility, and on-site restaurant, that jointly employs Plaintiffs and other WSAF employees. Within the scope of Defendants WSAF's business, at all relevant times, Defendants WSAF and Sleepy Hollow Hotel, through Defendants Igor Alterman, Shlomo Suchard and Linda Ferone, share interrelated operations, common management, and a centralized control of labor relations. At all relevant times, Defendants have shared and continue to share common facilities at their mutual place of business at 455 South Broadway, Tarrytown, New York 10591. Additionally, at all relevant times, Plaintiffs and other joint employees of WSAF were performing services for all Defendants at any given time as the services were mutually provided to all Defendants at all times and for the mutual benefit of all Defendants simultaneously.

**FACTS**

26. Defendants operate a hotel, banquet and catering, and events facility, and on-site restaurant, specializing in providing Kosher meals for events, located at 455 South Broadway, Tarrytown, New York 10591.

27. Defendants, through Defendants WSAF's services, provide weddings, Shabbos meals and other events with Kosher meals, parties, business conferences, and other events for their clientele in their hotel, banquet and catering and events facility, and on-site restaurant.

28. Defendants, through Defendants WSAF's services, also sometimes performed banquet and catering services at off-site events.

**Wage and Hour Claims**

29. Defendants employed Plaintiff Rodriguez from on or about December 11, 2023 through the present as a houseman.

30. Throughout his employment, Plaintiff Rodriguez was primarily responsible for setting up Defendants' facility for events and meals, tearing down the facility for events and meals, moving furniture and equipment, tables and chairs, cleaning up after events and meals, mopping and sweeping facilities, cleaning carpets and floors, and performing duties as a server as needed.

31. Defendants employed Plaintiff Fernandez from in or about April 2025 through on or about May 30, 2026 as a dishwasher.

32. Throughout his employment, Plaintiff Fernandez was primarily responsible for washing dishes, cleaning Defendants' kitchen area and facilities, and other tasks as needed.

33. Throughout their employment, Plaintiffs' job duties required them to perform manual tasks including, but not limited to, prolonged periods of standing, walking, climbing, bending, lifting, carrying, wiping, reaching, cleaning, and using cleaning implements, tools and machinery.

34. As is evident, throughout their employment, Plaintiffs spent nearly all of their hours worked and, as a result, spent more than twenty-five percent of their hours worked, during each week performing physical – and therefore manual – tasks.

35. Throughout his employment until on or about March 22, 2026, Plaintiff Rodriguez regularly worked between five to seven days during each workweek.

36. Throughout his employment until on or about March 22, 2026, Plaintiff Rodriguez frequently worked more than ten hours during each workday, and commonly worked from as early as between 6:00 a.m. to 9:00 a.m. until as late as between 7:00 p.m. until midnight on his workdays.

37. Throughout his employment until on or about March 22, 2026, Defendants required Plaintiff Rodriguez to work, and he did work, consistently more than sixty hours and frequently more than eighty hours during each workweek.

38. By way of example, during the week of January 12, 2025 through January 18, 2025, Defendants required Plaintiff Rodriguez to work on Monday through Thursday from 8:00 a.m. until 9:00 p.m., on Friday from 8:00 a.m. until 10:00 p.m., and on Saturday from 7:00 a.m. until 10:00 p.m., for a total of 81 hours during this workweek.

39. By way of another example, during the week of January 26, 2025 through February 1, 2025, Defendants required Plaintiff Rodriguez to work on Sunday through Tuesday from 8:00 a.m. until 9:00 p.m., on Wednesday from 8:00 a.m. until 8:00 p.m., on Thursday and Friday from 8:00 a.m. until 9:00 p.m. and on Saturday from 9:00 a.m. to 7:00 p.m., for a total of 87 hours during this workweek.

40. By way of another example, during the week of June 1, 2025 through June 7, 2025, Defendants required Plaintiff Rodriguez to work on Sunday from 8:00 a.m. until 10:00 p.m., on Monday from 8:00 a.m. until 9:00 p.m., on Tuesday from 7:00 a.m. until midnight, on Wednesday from 9:00 a.m. until 7:00 p.m., on Thursday from 9:00 a.m. until 9:00 p.m., and on Friday and Saturday from 8:00 a.m. until 11:00 p.m., for a total of 96 hours during this workweek.

41. Throughout his employment until on or about March 22, 2026, Plaintiff Rodriguez typically did not receive uninterrupted meal breaks during his shifts.

42. Accordingly, throughout his employment until on or about March 22, 2026, Defendants regularly required Plaintiff Rodriguez to work, and Plaintiff Rodriguez did work, far more than forty hours during his workweeks.

43. Throughout his employment, Plaintiff Fernandez frequently worked between five to seven days during many of his workweeks.

44. Throughout his employment, Plaintiff Fernandez frequently worked more than ten hours during each workday.

45. Throughout his employment, Plaintiff Fernandez's daily hours varied, though Plaintiff Fernandez commonly worked from as early as 8:00 a.m. until as late as between 2:00 a.m. and 3:00 a.m. the next day during his workdays during periods of his employment.

46. Throughout his employment, Defendants commonly required Plaintiff Fernandez to work, and he did work, more than forty hours – and often for more than sixty hours to more than 100 hours – during many of his workweeks.

47. By way of example, during the week of April 6, 2025 through April 13, 2025, Defendants required Plaintiff Fernandez to work on Monday for 16 hours, on Tuesday for 14 hours, on Wednesday for 15 hours, on Thursday for 16 hours, on Friday for 16 hours, on Saturday for 18 hours, and on Sunday for 18 hours, for a total of 113 hours during this workweek.

48. By way of another example, during the week of April 14, 2025 through April 20, 2025, Defendants required Plaintiff Fernandez to work on Monday for 9 hours, on Tuesday for 14 hours, on Wednesday for 16 hours, on Thursday for 15 hours, on Friday for 17 hours, on Saturday for 17 hours, and on Sunday for 16 hours, for a total of 104 hours during this workweek.

49. By way of another example, during the week of February 9, 2026 through February 15, 2026, Defendants required Plaintiff Fernandez to work on Tuesday for 8 hours, on Wednesday

for 12 hours, on Thursday for 5 hours, on Friday for 10 hours and on Saturday for 10 hours, for a total of 45 hours during this workweek.

50. By way of another example, during the week of February 23, 2026 through March 1, 2026, Defendants required Plaintiff Fernandez to work on Monday for 12 hours, on Thursday for 13 hours, on Friday for 12 hours, on Saturday for 11 hours and on Sunday for 11 hours, for a total of 59 hours during this workweek.

51. By way of another example, during the week of March 23, 2026 through March 29, 2026, Defendants required Plaintiff Fernandez to work on Thursday for 8 hours, on Friday for 12 hours, on Saturday for 15 hours and on Sunday for 9 hours, for a total of 44 hours during this workweek.

52. By way of another example, during the week of April 13, 2026 through April 19, 2026, Defendants required Plaintiff Fernandez to work on Monday for 14 hours, on Tuesday for 6 hours, on Friday for 11 hours, and on Sunday for 15 hours, for a total of 46 hours during this workweek.

53. Throughout his employment, Plaintiff Fernandez typically did not receive uninterrupted meal breaks during his shifts.

54. Accordingly, throughout his employment, Defendants regularly required Plaintiff Fernandez to work, and Plaintiff Fernandez did work, far more than forty hours during many of his workweeks.

55. Throughout their employment, Defendants paid Plaintiffs their straight-time, regular hourly rates of pay for all of their hours worked, including their hours worked in excess of forty hours during their workweeks.

56. Throughout their employment, despite working in excess of forty hours during many of their workweeks, Defendants failed to pay Plaintiffs at their statutorily required overtime rates of one and one-half times their hourly regular rates of pay or the applicable minimum wage, whichever is greater, for hours worked in excess of forty hours during their workweeks, in violation of the FLSA and NYLL.

57. Throughout their employment, Plaintiffs frequently worked daily shifts that exceeded ten hours per workday from their start to their finish.

58. However, throughout their employment, Defendants failed to pay Plaintiffs spread of hours compensation of one additional hour at the applicable minimum wage rate for each workday that exceeded ten hours, in violation of the NYLL.

59. Throughout the statutory period preceding the filing of the original Complaint through the present, Defendants required the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members – who worked as, *inter alia*, housemen, servers, bussers, banquet workers, chefs, cooks, dishwashers, kitchen workers, garbage workers, maintenance workers and housekeepers – to perform a litany of manual duties throughout their workday, including, but not limited to, mopping, sweeping, wiping, washing, scrubbing, cleaning up after events and meals, and other cleaning tasks, maintenance tasks, setting up and tearing down Defendants' facility for events and meals, moving furniture and equipment, tables and chairs, cleaning carpets and floors, utilizing cleaning implements and cleaning tools, using tools to setup and tear down furniture, fixtures and other supplies for events, cooking foods, chopping and stirring ingredients, carrying equipment, food and other items, washing dishes, serving duties, carrying garbage, and other physical tasks necessary to complete their tasks.

60. Throughout the statutory period preceding the filing of the original Complaint through the present, the Plaintiffs', FLSA Collective Action Plaintiffs', and Class Members' duties required them to perform many physical and manual tasks throughout their workday, including, but not limited to, prolonged periods of standing, walking, climbing, bending, lifting, carrying, wiping, reaching, cleaning, and using cooking and cleaning implements, tools and machinery.

61. Throughout the statutory period preceding the filing of the original Complaint through the present, the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members performed physical – and therefore manual – tasks during nearly all of their hours worked.

62. As such, throughout the statutory period preceding the filing of the original Complaint through the present, more than twenty-five percent of the Plaintiffs', FLSA Collective Action Plaintiffs', and Class Members' hours worked each week were spent performing physical – and therefore manual – tasks.

63. Throughout the statutory period preceding the filing of the original Complaint through the present, the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members were "manual workers" within the meaning of NYLL § 190(4).

64. Throughout the statutory period preceding the filing of the original Complaint through the present, Defendants paid Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members by various checks and Venmo payments from Defendant Alterman.

65. Throughout the statutory period preceding the filing of the original Complaint through the present, when Defendants paid Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members by checks, those checks were issued and signed by Defendant Alterman and included labels for "WSAF INC", "WSAF" and "IGOR ALTERMAN DBA WSAF."

66. Throughout the statutory period preceding the filing of the original Complaint through the present, Defendants frequently failed to pay Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members, who qualify as manual workers, their compensation on a weekly basis, instead paying them their wages many weeks after the wages were earned, in violation of the NYLL § 191 and the FLSA.

67. Throughout his employment until on or about March 22, 2026, Defendants consistently paid Plaintiff Rodriguez his wages many weeks after his wages were earned and due by paying every or nearly every workweeks' wages as long as two weeks to five weeks late, in violation of the FLSA and NYLL § 191.

68. Throughout the statutory period preceding the filing of the original Complaint through the present, Defendants frequently paid Plaintiff Fernandez, FLSA Collective Action Plaintiffs, and Class Members their wages many weeks after the wages were earned and due by paying every or nearly every workweeks' wages as long as two weeks to five weeks late, in violation of the FLSA and NYLL § 191.

69. Throughout the statutory period preceding the filing of the original Complaint through the present, Defendants' payment practices to routinely pay Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members their compensation between two weeks to five weeks late after their wages were both earned and due, while paying wages for the vast majority of pay periods three weeks to four weeks late after their wages were both earned and due, violated both the FLSA's prompt payment requirement and NYLL § 191.

70. Throughout the statutory period preceding the filing of the original Complaint through the present, the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members were

entitled to payment of their wages earned on a weekly basis and within seven calendar days after the end of the workweek in which the wages were earned, in accordance with NYLL § 191(1)(a).

71. For each pay period where wages were paid two or more weeks after their wages were earned, Defendants failed to timely pay Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members their wages earned on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned, in violation of NYLL § 191 and the FLSA.

72. Every time that Defendants failed to pay the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members their wages earned weekly and within seven days of the end of the workweek, the Defendants deprived them of the use of money to which they were legally entitled.

73. As a result of the Defendants' failure to timely pay their wages, the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members lost the time value of money.

74. The Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members are manual workers who depend upon their wages for sustenance and suffer harm that is particularly acute when their wages are delayed and they are temporarily deprived of their earned wages.

75. Each time the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members received late compensation for the work that they performed, the Defendants underpaid them for the work they performed.

76. Every time that the Defendants failed to pay the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members their wages earned weekly and within seven days of the end of their workweeks, the Defendants deprived them of the use of money that belonged to them. As a result, the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members were unable to do those things that every person does with their money, such as paying bills or buying goods that they needed or wanted to buy.

77. By way of example, these delayed wages prevented the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members from spending money earned on a host of everyday expenses and to provide for their basic needs including, but not limited to, purchasing food and groceries, rent or mortgage payments, gas or heating oil, utilities, medical supplies and services, insurance, automobile payments, fuel for vehicles, education tuition and expenses, daycare or childcare, public transportation, and other basic living expenses.

78. Additionally, the Defendants' delayed payment of wages forced the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members to forgo purchasing goods and services until a later time after their receipt of their late paid wages. Because of inflation, being an ever increasing scourge throughout the Covid-19 pandemic and during recent events, the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members were required to pay increased prices for the goods and services that they otherwise would have purchased at an earlier date were their wages lawfully paid on a weekly basis.

79. Throughout his employment, Plaintiff Rodriguez suffered significant harm because of Defendants' pay practices because Defendants failed to pay him wages earned within seven days of the end of his workweeks, as Plaintiff Rodriguez was repeatedly unable to pay all or a portion of his various bills, which caused him to make late payments, and repeatedly suffered an additional loss of the use of his money – even after it was paid by Defendants – as he was forced to expend those funds to pay late fees and interest caused by late or partial payments of his bills due to Defendants' delayed payment of wages. These harms, including but not limited to additional fees, costs, and interest would not have been incurred if Plaintiffs' wages were timely paid in accordance with NYLL § 191.

80. By retaining these wages earned beyond the timeframes set by NYLL § 191, the Defendants benefitted from the time value of money and their free use of such funds, at the expense of the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members. For example, during the interval of these delayed wage payments, the Defendants were free to utilize those funds to purchase goods and services, purchase ingredients and supplies to provide their services, pay rent or mortgages on their facilities, pay installment payments on company-owned equipment, pay for marketing and other business expenses, pay insurance policies, and accrue interest on those funds in their business accounts.

81. Throughout his employment, Defendants required Plaintiff Rodriguez to perform errands and pickup and transport supplies for Defendants' business.

82. For examples, throughout his employment, Defendants required Plaintiff Rodriguez to travel to and from locations to pick up linens in Rockland County, New York, perform errands to purchase and transport foods, supplies and other goods from suppliers such as Stop and Shop and Home Depot, purchase and pickup up supplies and decorations for events, travel to and from Connecticut to complete certain errands, and complete any other purchases for Defendants' business as needed.

83. Throughout his employment, by performing these errands and transportation tasks, Defendants required Plaintiff Rodriguez to use his personal vehicle and expend his own funds for gasoline, tolls, and maintenance of his vehicle.

84. Throughout his employment, despite performing these duties and expending these funds, Defendants did not reimburse Plaintiff Rodriguez for any expenditures relating to the use of his personal vehicle, including the purchase of gasoline, tolls, any portion of maintenance to his vehicles, or even paying mileage reimbursements.

85. Throughout his employment, Plaintiff Rodriguez's use of his personal vehicle and expenditure of these funds are business expenses that Defendants are required to pay.

86. Despite this, Defendants have not reimbursed Plaintiff Rodriguez for any of these expenditures and instead shifted these expenses to Plaintiff Rodriguez, resulting in unlawful deductions to Plaintiff Rodriguez's earned wages, by separate transactions, that were not required by law or regulation, and were not authorized by Plaintiff Rodriguez as the employee and were not for his benefit, in violation of NYLL § 193 and New York common law.

87. During his employment, Plaintiff Rodriguez confronted Defendants and complained regarding their unlawful payroll practices on multiple occasions.

88. For example, in or about February 2024, Plaintiff Rodriguez confronted and objected to Defendants, through Defendants Alterman and Suchard, regarding Defendants' payroll practices.

89. As another example, in or about August 2024, Plaintiff Rodriguez confronted and objected to Defendants, through Defendants Alterman and Suchard, regarding Defendants' payroll practices.

90. During these complaints, Plaintiff Rodriguez objected to Defendants' failure to pay an overtime premium for his wages for workweeks where his hours worked exceeds forty hours and to Defendants' failure to timely pay his wages earned by frequently paying his wages many weeks after his wages were earned and due.

91. In response, Defendants, through Defendant Alterman, refused to pay Plaintiff Rodriguez an overtime premium for wages for workweeks where his hours worked exceeds forty hours and stated that Defendants do not pay any of their employees overtime wages.

92. Worse still, in response, Defendants, through Defendant Alterman, refused to permit Plaintiff Rodriguez to work only forty hours during his workweeks or to work less than forty hours during his workweeks.

93. Instead, in response, Defendants, through Defendant Alterman, informed Plaintiff Rodriguez that his employment would be terminated if he refused to work more than forty hours during each of his workweeks because Defendants' workload required Plaintiff Rodriguez to work more than forty hours during every workweek.

94. Despite requiring Plaintiff Rodriguez to work more than forty hours during each of his workweeks or face termination, Defendants, through Defendant Alterman, continued to refuse to pay an overtime premium for his hours worked in excess of forty hours during his workweeks.

95. In or about mid-May 2026, Plaintiff Fernandez complained and objected to Defendants, through Defendant Alterman, regarding their unlawful payroll practices, including Defendants' failure to timely pay his wages earned by frequently paying his wages many weeks after his wages were earned and due.

96. Despite this complaint, Defendants rejected Plaintiff Fernandez's complaint, refused to remedy their unlawful payroll practices  and continued paying his wages many weeks after his wages were earned and due.

97. Despite Plaintiffs' complaints, Defendants did not remedy their consistent failure to pay proper overtime wages earned and their consistent failure to timely pay their wages earned, and continued paying their wages many weeks after their wages were earned and due.

98. Throughout Plaintiffs' employment and the statutory period, Defendants required FLSA Collective Action Plaintiffs and Class Members to work more than forty hours during their

workweeks without paying them an overtime premium for their hours worked in excess of forty hours, in violation of the FLSA and NYLL.

99. Throughout Plaintiffs' employment and the statutory period, Defendants failed to timely pay the FLSA Collective Action Plaintiffs and Class Members their wages until many weeks after their wages were earned and due, in violation of the FLSA and NYLL.

100. Throughout Plaintiffs' employment and the statutory period, many of Defendants' employees that constitute FLSA Collective Action Plaintiffs and Class Members complained to Defendants, while using Plaintiff Rodriguez as a translator to communicate with Defendants, to object to Defendants' failure to pay an overtime premium for their hours worked in excess of forty hours and to object to Defendants' failure to timely pay their wages after they were earned and due.

101. During these discussions, Defendants' employees that constitute FLSA Collective Action Plaintiffs and Class Members often shared proof through Plaintiff Rodriguez, who was helping as a translator to communicate with Defendants, that they worked more than forty hours during their workweeks.

102. Despite these complaints by employees that constitute FLSA Collective Action Plaintiffs and Class Members, Defendants failed to remedy these violations of the FLSA and NYLL.

103. Throughout their employment, Defendants failed to provide written notice to Plaintiffs upon their hire in their primary language – or at all – of their rates of pay and other information required by NYLL § 195(1).

104. Throughout their employment, Defendants failed to furnish Plaintiffs with accurate – or any – statements of their wages earned, including, *inter alia*, their correct regular and overtime

rates of pay, their correct amount of regular and overtime hours worked, their spread of hours compensation, and their correct amount of gross wages, net wages, deductions and allowances, and failed to provide the employers' address and phone number even on Defendants' non-compliant checks issued to them, for each pay period as required by NYLL § 195(3).

105. By failing to provide Plaintiffs with a wage notice meticulously detailing Plaintiffs' hourly rates upon their hire, as well as by failing to record their actual amount of hours worked and the manner of calculating their compensation for each workweek as required by NYLL §§ 195(1) and (3) and the related New York State Department of Labor Regulations, and by failing to provide other accurate and/or complete information under these requirements, such as failing to provide accurate wage statements (i.e. paystubs), Defendants caused actual and concrete harm to Plaintiffs, who were unable to determine whether they had been underpaid for their proper straight-time, regular hourly wages or overtime compensation throughout their employment.

106. Because Plaintiffs worked without the accurate and complete information required by NYLL §§ 195(1) and (3), Plaintiffs was unable to determine the precise amount of wages that they were entitled to receive, assess the manner in which their wages were calculated, and determine that they had been underpaid during their workweeks, which caused Plaintiffs to suffer unpaid wages throughout their employment and caused them to suffer underpayments longer than they would have if a compliant – or any – wage notice and/or a complaint or accurate wage statements had been provided.

107. With no way to know how much Plaintiffs should have been making or receiving in wages, Plaintiffs worked throughout their employment without discovering how much they had been underpaid during their workweeks, which denied Plaintiffs not only the time-value of that money, but also resulted in continued actual underpayments.

108. Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and the NYLL by failing to maintain accurate records of the wages earned by and paid to Plaintiffs, failing to pay proper overtime wages in accordance with their hours worked, refusing to pay overtime wages even when confronted with their unlawful wage policies, failing to pay spread of hours compensation in accordance with their hours worked, engaging in unlawful deductions to Plaintiffs' wages, and failing to timely pay wages earned under the FLSA and NYLL.

109. On March 16, 2026, Plaintiff Rodriguez commenced this lawsuit against Defendants by filing his original lawsuit in the Southern District of New York, which asserted claims under the FLSA, NYLL and New York common law.

110. On March 19, 2026, formal service of process of Plaintiff Rodriguez's Summonses and original Complaint was completed on Defendants Alterman, Suchard and Ferone.

111. On March 24, 2026, formal service of process of Plaintiff Rodriguez's Summonses and original Complaint was completed on Defendants WSAF Inc. and Sleepy Hollow Hotel.

112. Despite being confronted with their unlawful wage policies though the original Complaint, Defendants did not remedy or alter their unlawful payroll or employee policies and practices and continued to engage in the same unlawful conduct under the FLSA, NYLL and New York common law.

113. Throughout the statutory period preceding the filing of the original Complaint through the present, Defendants continued to pay Plaintiff Fernandez, FLSA Collective Action Plaintiffs, and Class Members their wages many weeks after the wages were earned and due, in violation of the FLSA and NYLL § 191.

114. Throughout the statutory period preceding the filing of the original Complaint through the present, Defendants continued their failure to pay Plaintiff Fernandez, FLSA Collective Action Plaintiffs, and Class Members proper overtime wages in accordance with their hours worked, in violation of the FLSA and NYLL.

115. Throughout the statutory period preceding the filing of the original Complaint through the present, Defendants continued their failure to pay Plaintiff Fernandez, FLSA Collective Action Plaintiffs, and Class Members spread of hours compensation when their hours worked exceeds ten hours per workday from their start to their finish, in violation of the NYLL.

116. Throughout the statutory period preceding the filing of the original Complaint through the present, Defendants continued their failure to provide Plaintiff Fernandez, FLSA Collective Action Plaintiffs, and Class Members with accurate wage statements for each pay period in violation of NYLL § 195(1).

117. Additionally, Defendants have been involved in prior litigations relating to similar issues as those asserted herein, which included various wage and hour allegations, including claims for failure to pay overtime compensation under the FLSA and NYLL, minimum wage compensation under the FLSA and NYLL, spread of hours compensation under the NYLL, and for failure to provide compliant wage statements for each pay period and a wage notice at an employees' time of hire in violation of NYLL §§ 195(1), (3). Thus, Defendants' violations of the applicable wage and hour laws were willful, intentional and did not occur as part of a good faith effort to comply with the applicable wage and hour laws.

118. Defendants treated and paid Plaintiffs, FLSA Collective Action Members and Class Members in the same or similar manner pursuant to Defendants' corporate-wide payroll and employment practices.

119. Plaintiffs, FLSA Collective Action Members and Class Members suffered the same or similar harms as a result of Defendants' corporate-wide payroll and employment practices.

**Retaliation Claims Asserted by Plaintiff Rodriguez**

120. On several occasions during his employment, Plaintiff Rodriguez confronted Defendants and complained regarding their unlawful payroll practices, including Defendants' failure to pay an overtime premium for his wages for workweeks where his hours worked exceeds forty hours and to Defendants' failure to timely pay his wages earned by frequently paying his wages many weeks after his wages were earned and due.

121. In each instance, Defendants rejected Plaintiff Rodriguez's complaints, refused to remedy their unlawful payroll practices and, in or about Augst 2024, instead threatened that Plaintiff Rodriguez's employment would be terminated if he refused to work more than forty hours per week, despite Defendants' refusal to pay an overtime premium for his hours worked in excess of forty hours.

122. Due to Defendants' past failures to remedy their unlawful pay practices, Plaintiff Rodriguez was compelled to commence this litigation to seek a remedy for Defendants' violations of the FLSA, NYLL and New York common law.

123. On March 16, 2026, Plaintiff Rodriguez commenced this lawsuit against Defendants by filing his original lawsuit in the Southern District of New York, which asserted claims under the FLSA, NYLL and New York common law.

124. On March 18, 2026, Plaintiff Rodriguez sent a litigation hold letter notifying Defendants of this litigation, which included a copy of the Summonses and original Complaint.

125. This litigation hold letter, sent on March 18, 2026, specifically cautioned Defendants against taking any retaliatory actions against Plaintiff Rodriguez for filing this lawsuit.

That letter explained that the FLSA and NYLL prohibits retaliation, and explained that actions including, but not limited to, "termination,… suspension,… reduction of hours worked, adverse changes in pay, adverse changes in job duties, adverse changes to the terms and conditions of his employment, or any other form of negative action that would dissuade a reasonable employee from asserting their rights under or from raising a concern about a possible violation of the wage-and-hour laws…" would constitute a claim for retaliation under the FLSA and NYLL.

126. On March 19, 2026, Defendants received Plaintiff Rodriguez's litigation hold letter notifying Defendants of this litigation, which included a copy of the Summonses and original Complaint.

127. On March 19, 2026, formal service of process of Plaintiff Rodriguez's Summonses and Complaint was completed on Defendants Alterman, Suchard and Ferone.

128. On Sunday, March 22, 2026, Defendants, through Defendant Alterman, confronted Plaintiff Rodriguez with an ultimatum that he agree to detrimental changes to the terms and conditions of his employment or that his employment would be terminated.

129. Specifically, on March 22, 2026, Defendant Alterman demanded that Plaintiff Rodriguez sign a contract that would classify Plaintiff Rodriguez as an independent contractor going forward, require him to engage in new contracts for each particular daily project, pay him a daily rate of pay for each job, and accept that his wages for each project would be paid within fourteen days of the project being completed and Defendants' "acceptance" that the job was satisfactorily completed.

130. On March 22, 2026, Defendant Alterman informed Plaintiff Rodriguez that there would be "no work for" Plaintiff Rodriguez and he would be immediately terminated if he did not sign this contract by Monday, March 23, 2026.

131. On March 23, 2026, Plaintiff Rodriguez reported to work as normal.

132. On March 23, 2026, Plaintiff Rodriguez informed Defendant Alterman that he rejected Defendants' proposed contract altering the terms and conditions of his employment and that Plaintiff Rodriguez would only continue his employment with Defendants as an hourly paid employee.

133. In response, on March 23, 2026, Defendants, through Defendant Alterman, relented on their threat to terminate Plaintiff Rodriguez's employment and permitted Plaintiff Rodriguez to continue working as an hourly paid employee.

134. Beginning on March 23, 2026 and continuing thereafter, Defendants reduced Plaintiff Rodriguez's hours worked to just forty hours or sometimes even less hours per workweek in retaliation for Plaintiff Rodriguez engaging in this protected activity.

135. Despite prohibiting only Plaintiff Rodriguez from working more than forty hours beginning on March 23, 2026 and continuing thereafter, Defendants have not prohibited any other employees from working more than forty hours during their workweeks.

136. Indeed, since March 23, 2026 through the filing of this Amended Complaint, Defendants have continued to regularly employ other employees for hours in excess of forty hours.

137. By reducing Plaintiff Rodriguez's hours worked from consistently more than sixty hours and frequently more than eighty hours during each workweek to only forty hours or even less hours during each workweek, Defendants dramatically reduced Plaintiff Rodriguez's weekly income, often by more than half of his wages that he typically earned before filing this lawsuit.

138. Moreover, by reducing Plaintiff Rodriguez's hours worked from consistently more than sixty hours and frequently more than eighty hours during each workweek to only forty hours or even less hours during each workweek, Defendants substantially and negatively altered the

terms and conditions of Plaintiff Rodriguez's employment that has severely impacted his personal finances.

139. On or about May 21, 2026, Defendants, through Defendant Alterman, summoned Plaintiff Rodriguez to Defendant Alterman's office during his workday.

140. During that meeting, on or about May 21, 2026, Defendant Alterman, while attempting to exert his superior position as a current employer of Plaintiff Rodriguez, repeatedly attempted to pressure Plaintiff Rodriguez to settle this lawsuit and withdraw his claims.

141. In taking these coercive actions, on or about May 21, 2026, Defendant Alterman sought to pressure Plaintiff Rodriguez to resolve his lawsuit without the involvement of his attorneys, despite Defendant Alterman knowing Plaintiff Rodriguez was represented by attorneys and Defendant Alterman himself being represented by attorneys.

142. Defendants have been aware of the prohibition against retaliation under the FLSA and NYLL with respect to employees who assert claims under those statutes since at least March 19, 2026.

143. Despite that notice, Defendants engaged in these acts against Plaintiff Rodriguez in retaliation for Plaintiff Rodriguez bringing claims for unpaid wages and untimely paid wages under the FLSA and NYLL, and other claims under the NYLL, and New York common law, as well as asserting multiple good faith complaints objecting to Defendants' unlawful wage and hour practices, which all constitute protected activity under the FLSA, NYLL and NYLL § 740.

144. Defendants' actions were designed to dissuade a reasonable employee from exercising their rights under the FLSA and NYLL.

145. Based on the foregoing, Defendants repeatedly and callously retaliated against Plaintiff Rodriguez for engaging in protected activity, in violation of the FLSA, NYLL and NYLL § 740.

**Retaliation Claims Asserted by Plaintiff Fernandez**

146. In or about mid-May 2026, Plaintiff Fernandez complained and objected to Defendants, through Defendant Alterman, regarding their unlawful payroll practices, including Defendants' failure to timely pay his wages earned by frequently paying his wages many weeks after his wages were earned and due.

147. In or about mid-May 2026, Plaintiff Fernandez informed Defendant Alterman that he needed to be paid on a weekly basis.

148. Despite this complaint, Defendants rejected Plaintiff Fernandez's complaint, refused to remedy their unlawful payroll practices, told Plaintiff Fernandez that he would need to continue to wait to be paid his wages as in the past, and continued paying his wages many weeks after his wages were earned and due.

149. Due to Defendants' past failures to remedy their unlawful pay practices, Plaintiff Fernandez was compelled to join this litigation as a then-opt-in Plaintiff to seek a remedy for Defendants' violations of the FLSA and NYLL.

150. On May 21, 2026, Plaintiff Fernandez joined this action as a then-opt-in Plaintiff by filing his consent to sue form, and thereby asserting claims for failure to pay him proper wages under the FLSA and NYLL and failing to pay him timely wages under the FLSA and NYLL.

151. Prior to May 21, 2026, counsel for all Defendants had appeared in this action.

152. Thus, on May 21, 2026, all Defendants received notice that Plaintiff Fernandez joined this action as a then-opt-in Plaintiff through that filing on the docket.

153. Additionally, on May 21, 2026, Plaintiff Fernandez, through counsel, also informed Defendants' attorneys that Plaintiff Fernandez joined this action as a then-opt-in Plaintiff and cautioned Defendants against taking any retaliatory actions against him for joining this litigation.

154. On or about May 29, 2026, Defendants, through Defendant Alterman, gave Plaintiff Fernandez his final paycheck.

155. On or about May 30, 2026, Defendants, through Defendant Alterman, contacted Plaintiff Fernandez by telephone and informed him that "We don't need you anymore. Don't come back."

156. Accordingly, on or about May 30, 2026, Defendants summarily terminated Plaintiff Fernandez's employment, in violation of the FLSA, NYLL and NYLL § 740.

157. Within just days of his termination, Defendants replaced Plaintiff Fernandez by hiring a new employee to fill and perform Plaintiff Fernandez's former position.

158. Defendants have been aware of the prohibition against retaliation under the FLSA and NYLL with respect to employees who assert claims under those statutes since at least March 19, 2026.

159. Despite that notice, Defendants engaged in these acts against Plaintiff Fernadez in retaliation for Plaintiff Fernandez bringing claims for unpaid wages and untimely paid wages under the FLSA and NYLL, and other claims under the NYLL, as well as asserting a good faith complaint objecting to Defendants' unlawful wage and hour practices, which all constitute protected activity under the FLSA, NYLL and NYLL § 740.

160. Defendants' actions were designed to dissuade a reasonable employee from exercising their rights under the FLSA and NYLL.

161. Based on the foregoing, Defendants repeatedly and callously retaliated against Plaintiff Fernandez for engaging in protected activity, in violation of the FLSA, NYLL and NYLL § 740.

**COLLECTIVE ACTION ALLEGATIONS**

162. At all times relevant, Plaintiffs and other FLSA Collective Action Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decisions, plans and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them overtime pay for hours worked in excess of forty (40) hours each week and willfully failing and refusing to timely pay them their wages earned in accordance with the prompt payment requirements of the FLSA.

163. Upon information and belief, there are many current and former employees who are similarly situated to the Plaintiffs, who have been underpaid in violation of the FLSA and untimely paid their earned wages in violation of the FLSA. The named Plaintiffs are representative of those other workers and are acting on behalf of the Defendants' current and former employees' interests as well as their own interests in in bringing this action.

164. Plaintiffs seek to proceed as a collective action with regard to the First and Second Claims for Relief, pursuant to 29 U.S.C. § 216(b) on behalf of themselves, individually, and the following similarly situated employees:

> All non-exempt persons who are currently, or have been employed by the Defendants as a non-exempt, hourly paid employee, including but not limited to housemen, servers, bussers, banquet workers, chefs, cooks, dishwashers, kitchen workers, garbage workers, maintenance workers and housekeepers,[1] and/or in a

[1] This putative collective action covers hourly paid employees who were employed, wholly or in part, by Defendants WSAF Inc. and/or Alterman. This putative collective action does not include

similarly situated position, at any time during the three (3) years prior to the filing of their respective consent forms.

165. The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. These similarly situated employees should be notified of and allowed to opt-into this action pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, persons similarly situated to the Plaintiffs, who have been unlawfully deprived of overtime pay in violation of the FLSA and unlawfully deprived of timely paid wages under the prompt payment requirements of the FLSA, will be unable to secure compensation and damages to which they are entitled and which has been unlawfully withheld from them by the Defendants.

**CLASS ACTION ALLEGATIONS**

166. Plaintiffs brings the Third through Seventh Claims for Relief on behalf of themselves, individually, and a class of persons under Fed. R. Civ. P. 23 consisting of all persons who are currently, or have been, employed by the Defendants as a non-exempt, hourly paid employee, including but not limited to housemen, servers, bussers, banquet workers, chefs, cooks, dishwashers, kitchen workers, garbage workers, maintenance workers and housekeepers,[2] and/or in a similarly situated position at any time during the statutory period of up to six (6) years prior

housekeepers and other non-exempt, hourly paid employees employed solely by Sleepy Hollow Hotel, Shlomo Suchard and Linda Ferone.

[2] This putative class action covers non-exempt, hourly paid employees who were employed, wholly or in part, by Defendants WSAF Inc. and/or Alterman. This putative class action does not include housekeepers and other non-exempt, hourly paid employees employed solely by Sleepy Hollow Hotel, Shlomo Suchard and Linda Ferone.

to the filing of the original Complaint through the date of judgment (hereinafter referred to as the "Class" or the "Class Members").

167. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and rates of pay for Class Members may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

168. The proposed Class is so numerous such that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) individuals who are currently, or have been, employed by the Defendants as a covered Class Member at any time during the statutory period of up to six (6) years prior to the filing of the original Complaint through the present.

169. Defendants have acted and/or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

170. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including, but not limited to:

(a) Whether Defendants failed and/or refused to pay the Plaintiffs and Class Members premium overtime compensation at the correct rates of pay for hours worked in excess of forty hours in a single workweek;

(b) Whether Defendants failed and/or refused to pay the Plaintiffs and Class Members spread of hours compensation;

(c) Whether Defendants failed to timely pay wages to Plaintiffs and Class Members, including but not limited to failing to pay Plaintiffs and Class Members on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned, in violation of NYLL § 191;

(d) Whether Defendants failed to furnish the Plaintiffs and Class Members with a compliant notice of wage rate upon their hire and/or whether such notice was provided in their primary language;

(e) Whether Defendants failed to furnish the Plaintiffs and Class Members with accurate wage statements for each pay period;

(f) Whether Defendants' general practice of failing and/or refusing to pay Plaintiffs and Class Members overtime pay and/or spread of hours compensation was done willfully and/or with reckless disregard of the state wage and hour laws;

(g) Whether Defendants took any active steps to ascertain and comply with the state wage and hour laws regarding their payment of wages to Plaintiffs and Class Members;

(h) Whether Defendants failed to keep and maintain true and accurate payroll records, including, *inter alia*, recording all hours worked and compensation received for the Plaintiffs and Class Members;

(i) Whether Defendants' policies, practices, programs, procedures, protocols, and plans regarding keeping and maintaining payroll records complied with the law; and

(j) What was the nature and extent of the Class-wide injury and the appropriate measure of damages for the class.

171. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All of the Class Members were subject to the same corporate practices of Defendants. Defendants' corporate-wide policies and practices affected and harmed all Class Members similarly, and Defendants benefited from the same type of unfair and/or

wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

172. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.

173. Plaintiffs have retained counsel competent and experienced in class actions, wage and hour litigation, and employment litigation.

174. A class action is superior to other available methods for the fair and efficient adjudication of litigation, particularly in the context of wage and hour litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant savings of these costs.

175. The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that may result in inconsistent judgments about Defendants' practices.

176. Furthermore, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so

can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

**FIRST CLAIM FOR RELIEF**
**(FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES)**

177. Plaintiffs and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

178. Defendants employed Plaintiffs and persons similarly situated to Plaintiffs for workweeks longer than forty (40) hours and willfully failed to compensate the Plaintiffs and persons similarly situated to Plaintiffs for the time worked in excess of forty (40) hours per week at a rate of at least one and one-half times the applicable minimum wage or their proper regular hourly rates or pay, whichever is greater, in violation of the FLSA.

179. Defendants' violations of the FLSA have been willful and intentional.

180. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

181. As a result of Defendants' unlawful acts, Plaintiffs and persons similarly situated to Plaintiffs with respect to Defendants' violations of the FLSA are entitled to recover overtime compensation in amounts to be determined at trial, liquidated damages, attorneys' fees and costs of this action.

**SECOND CLAIM FOR RELIEF**
**(FAIR LABOR STANDARDS ACT – PROMPT PAYMENT VIOLATION)**

182. Plaintiffs and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

183. Plaintiffs and any FLSA Collective Action Plaintiff who opts-into this action, are current and former employees entitled to prompt payment of their statutorily required wages. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

184. Under the FLSA, late-paid wages are a form of unpaid wages.

185. Defendants withheld Plaintiffs' and any FLSA Collective Action Plaintiff who opts-into this action's federally mandated and already earned wages for many weeks after the workweek when the wages were earned.

186. Based on the foregoing, Defendants unreasonably withheld Plaintiffs' and any FLSA Collective Action Plaintiff who opts-into this action's federally mandated wages after the conclusion of their workweeks.

187. This delay was pursuant to Defendants' company-wide payroll policy and practice of paying their employees many weeks after the workweek when the wages were earned.

188. Such a delay is inherently unreasonable, as Defendants were required by New York law to pay Plaintiffs and any FLSA Collective Action Plaintiff who opts-into this action within seven days after the end of their workweek.

189. Each time that Defendants failed to promptly pay Plaintiffs and any FLSA Collective Action Plaintiff who opts-into this action their wages, the Defendants deprived them of the use of money to which they were legally entitled.

190. Defendants failed to make a good faith effort to comply with the FLSA with respect to compensating the Plaintiffs and any FLSA Collective Action Plaintiff who opts-into this action.

191. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

192. As a consequence of the willful delay of wages, alleged above, Plaintiffs and any FLSA Collective Action Plaintiff who opts-into this action incurred damages and seek to recover liquidated damages, interest, attorneys' fees, and costs in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – UNPAID OVERTIME WAGES)**

193. Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

194. Defendants employed Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, for workweeks longer than forty hours and failed to compensate the Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, for hours worked in excess of forty hours per week at a rate of at least one and one-half times the applicable minimum wage or their proper regular hourly rates of pay, whichever is greater, in violation of the NYLL.

195. By Defendants' failure to pay Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, their correct overtime wages for hours worked in excess of forty hours per week, Defendants violated the NYLL, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including 12 N.Y.C.R.R. § 146.

196. Defendants' violations of the NYLL have been willful and intentional.

197. Due to Defendants' violations of the NYLL, Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to recover from Defendants unpaid overtime wages, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

**FOURTH CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – FAILURE TO PAY TIMELY WAGES)**

198. Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

199. The Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members are manual workers as defined by NYLL § 190(4).

200. Defendants were required to pay the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members on a weekly basis, and not later than seven days after the end of the workweek in which the wages were earned.

201. Defendants failed to pay the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members on a weekly basis and instead paid the Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members their wages many weeks after their wages were earned in violation of NYLL § 191.

202. Each time that the Defendants failed to pay Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members their wages earned weekly and within seven days of the end of the workweek, the Defendants deprived them of the use of money to which they were legally entitled.

203. Defendants' violations of the NYLL have been willful and intentional.

204. As a result of the Defendants' failure to timely pay their wages, Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members lost the time value of money.

205. Based on the foregoing, Plaintiffs, FLSA Collective Action Plaintiffs, and Class Members are entitled to damages and/or interest, reasonable attorney's fees and costs.

**FIFTH CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – SPREAD OF HOURS VIOLATION)**

206. Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

207. Defendants failed to pay Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, one additional hour of pay at the basic minimum wage rate for each day their spread of hours exceeded ten in violation of NYLL § 650 *et seq.* and 12 NYCRR § 146-1.6.

208. Defendants' failure to pay spread-of-hours compensation was willful and intentional.

209. For the foregoing reasons, Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to recover unpaid spread of hours compensation, liquidated damages, attorneys' fees, costs of this action and interest as permitted by law.

**SIXTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 195(1))**

210. Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

211. Defendants failed to provide Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, with a written notice upon their hire in their primary

language – or at all – regarding, *inter alia*, their rate of pay, the basis of their rate of pay, the employee's regular pay day, the name, address and telephone number of the employer, and other information required by NYLL § 195(1).

212. Due to Defendants' failure to provide Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, with the notice required by NYLL § 195(1), Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to statutory damages, attorneys' fees and costs of this action.

**SEVENTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 195(3))**

213. Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

214. Defendants failed to provide Plaintiffs, Class Members and any FLSA Collective Action Plaintiff, with accurate – or any – statements of their wages earned, including, *inter alia*, their correct regular and overtime rates of pay, their correct amount of regular and overtime hours worked, spread of hours compensation, and their correct amount of gross wages, net wages, deductions and allowances, and failed to provide the employers' address and phone number even on Defendants' non-compliant checks issued to them, for each pay period as required by NYLL § 195(3).

215. Due to Defendants' failure to provide Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, with accurate wage statements as required by NYLL § 195(3), Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to statutory damages, attorneys' fees and costs of this action.

**EIGHTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 193)**
**(ON BEHALF OF PLAINTIFF RODRIGUEZ ONLY)**

216. Plaintiff Rodriguez repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

217. NYLL § 193 prohibits employers from taking any deductions from wages, except as required by law or regulation, or authorized by the employee for the employee's benefit.

218. Based on the forgoing, Defendants engaged in unlawful deductions to Plaintiff Rodriguez's wages, by separate transactions, in violation of NYLL § 193 and the supporting New York State Department of Labor Regulations.

219. Thus, Defendants made deductions to Plaintiff Rodriguez's wages, solely for the benefit of the Defendants, without Plaintiff Rodriguez's authorization, and not for the benefit of the Plaintiff Rodriguez, in violation of NYLL § 193 and the supporting New York State Department of Labor Regulations.

220. Defendants' violations of the NYLL have been willful and intentional.

221. Due to Defendants' violations of the NYLL, Plaintiff Rodriguez is entitled to damages in an amount to be determined at trial, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

**NINTH CLAIM FOR RELIEF**
**(UNJUST ENRICHMENT)**
**(ON BEHALF OF PLAINTIFF RODRIGUEZ ONLY)**

222. Plaintiff Rodriguez repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

223. Plaintiff Rodriguez performed work for the benefit of Defendants, at Defendants' behest. However, Defendants deprived Plaintiff Rodriguez of a portion of these earned wages by

requiring Plaintiff Rodriguez to perform errands and transportation tasks for Defendants using his personal vehicle and expending his own funds for gasoline, tolls, and maintenance of his vehicle.

224. Throughout his employment, despite performing these duties and expending these funds, Defendants did not reimburse Plaintiff Rodriguez for any expenditures relating to the use of his personal vehicle, including the purchase of gasoline, tolls, any portion of maintenance to his vehicles, or even paying mileage reimbursements.

225. As a result, throughout his employment, Defendants shifted these business expenses to Plaintiff Rodriguez, in the form of unlawful and unauthorized deductions to Plaintiff Rodriguez's earned wages, by separate transactions.

226. By doing so, Defendants deprived Plaintiff Rodriguez of his earned wages and/or money that Defendants were required to pay and/or reimburse as a business expense.

227. Due to Defendants' conduct in violation of New York common law, Defendants were enriched at the expense of Plaintiff Rodriguez, and it is against equity and good conscience to permit Defendants to retain what is sought to be recovered.

228. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff Rodriguez has sustained and is entitled to recover damages, out of pocket costs, other incidental and consequential damages, costs of this action, and interest as permitted by law.

229. Defendants violated New York common law against Plaintiff Rodriguez by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff Rodriguez's rights and Plaintiff Rodriguez is therefore entitled to an award of punitive damages under New York law.

**TENTH CLAIM FOR RELIEF**
**(FAIR LABOR STANDARDS ACT – RETALIATION)**
**(ON BEHALF OF PLAINTIFFS ONLY)**

230. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

231. Pursuant to FLSA § 215(a)(3), it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint ... under ... this chapter, or has testified or is about to testify in any such proceeding."

232. As described above, Defendants are an employer within the meaning of the FLSA, while Plaintiffs are employees within the meaning of the FLSA.

233. As described above, after Plaintiff Rodriguez filed his good faith complaint in this matter on March 16, 2026, regarding Defendants' unlawful pay practices, including failure to pay him proper wages under the FLSA and failure to pay timely wages under the NYLL, which constitutes protected activity under the FLSA, Defendants retaliated by threatening to terminate his employment, attempting to force Plaintiff Rodriguez to resign and accept an independent contractor position under threat of termination, and by dramatically reducing Plaintiff Rodriguez's weekly compensation.

234. As described above, after Plaintiff Fernandez asserted a good faith complaint to Defendants regarding Defendants' unlawful pay practices under the FLSA in or about mid-May 2026 and after he joined this action as a then-opt-in Plaintiff by filing a consent to sue form in this matter on May 21, 2026, thereby asserting claims for failure to pay him proper wages under the FLSA and failing to pay him timely wages under the FLSA, which constitute protected activity under the FLSA, Defendants retaliated by terminating his employment on or about May 30, 2026.

235. Based on the foregoing, Defendants have been aware of the prohibition against retaliation under the FLSA with respect to employees who assert claims under those statutes since at least March 19, 2026.

236. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiffs are entitled to any economic damages suffered, including any loss of past and future earnings and other employment benefits, for which they are entitled to an award of monetary damages and other relief.

237. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiffs have suffered, and continues to suffer, emotional distress, harm to their professional reputation, mental anguish, embarrassment, humiliation and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

238. Additionally, Plaintiffs are entitled to compensatory damages, liquidated damages, as well as punitive damages for Defendants' malicious, willful, and wanton violations of the FLSA's anti-retaliation provisions, and all other appropriate forms of relief, including monetary damages, out of pocket costs, attorneys' fees and costs of this action.

**ELEVENTH CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – RETALIATION)**
**(ON BEHALF OF PLAINTIFFS ONLY)**

239. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

240. Pursuant to NYLL § 215, it is unlawful to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee" who has engaged in protected activity under the statute.

241. As described above, Defendants are an employer within the meaning of the NYLL, while Plaintiffs are employees within the meaning of the NYLL.

242. As described above, after Plaintiff Rodriguez filed his good faith complaint in this matter on March 16, 2026, regarding Defendants' unlawful pay practices, including failure to pay him proper wages under the NYLL and failure to pay timely wages under the NYLL, which constitutes protected activity under the NYLL, Defendants retaliated by threatening to terminate his employment, attempting to force Plaintiff Rodriguez to resign and accept an independent contractor position under threat of termination, and by dramatically reducing Plaintiff Rodriguez's weekly compensation.

243. As described above, after Plaintiff Fernandez asserted a good faith complaint to Defendants regarding Defendants' unlawful pay practices under the NYLL in or about mid-May 2026 and after he joined this action as a then-opt-in Plaintiff by filing a consent to sue form in this matter on May 21, 2026, thereby asserting claims for failure to pay him proper wages under the NYLL and failing to pay him timely wages under the NYLL, which constitute protected activity under the NYLL, Defendants retaliated by terminating his employment on or about May 30, 2026.

244. Based on the foregoing, Defendants have been aware of the prohibition against retaliation under the NYLL with respect to employees who assert claims under those statutes since at least March 19, 2026.

245. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiffs are entitled to any economic damages suffered, including any loss of past and future earnings and other employment benefits, for which they are entitled to an award of monetary damages and other relief.

246. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiffs have suffered, and continues to suffer, emotional distress, harm to his professional reputation, mental anguish, embarrassment, humiliation and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

247. Additionally, Plaintiffs are entitled to compensatory damages, liquidated damages, as well as punitive damages for Defendants' malicious, willful, and wanton violations of the NYLL's anti-retaliation provisions, and all other appropriate forms of relief, including monetary damages, out of pocket costs, attorneys' fees, costs of this action and interest as permitted by law.

248. At or before the filing of this Amended Complaint, Plaintiffs has served notice of this action upon the Office of the New York State Attorney General.

**TWELFTH CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – RETALIATION UNDER NYLL § 740)**
**(ON BEHALF OF PLAINTIFFS ONLY)**

249. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

250. Section 740 of the New York Labor Law prohibits an employer from taking "any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety; (b) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such activity, policy or practice by such employer; or (c) objects to, or refuses to participate in any such activity, policy or practice."

251. At all relevant times, Plaintiffs were employees of Defendants within the meaning of NYLL § 740.

252. At all relevant times, Defendants were employers within the meaning of NYLL § 740 and Defendants employed "one or more employees."

253. As described above, after Plaintiff Rodriguez filed his good faith complaint in this matter on March 16, 2026, regarding Defendants' unlawful pay practices, including failure to pay him proper wages and failure to pay timely wages under the FLSA, NYLL and New York common law, which constitutes protected activity under NYLL § 740, Defendants retaliated by threatening to terminate his employment, attempting to force Plaintiff Rodriguez to resign and accept an independent contractor position under threat of termination, and by dramatically reducing Plaintiff Rodriguez's weekly compensation.

254. As described above, after Plaintiff Fernandez asserted a good faith complaint to Defendants regarding Defendants' unlawful pay practices under the FLSA and NYLL in or about mid-May 2026 and after he joined this action as a then-opt-in Plaintiff by filing a consent to sue form in this matter on May 21, 2026, thereby asserting claims for failure to pay him proper wages under the FLSA and NYLL and failing to pay him timely wages under the FLSA and NYLL, which constitute protected activity under NYLL § 740, Defendants retaliated by terminating his employment on or about May 30, 2026.

255. Based on the foregoing, Plaintiffs engaged in multiple incidents of protected activity that were substantial motivating reasons for Defendants' retaliation against Plaintiffs.

256. Based on the foregoing, Defendants have been aware of the prohibition against retaliation under the FLSA and NYLL with respect to employees who assert claims under those statutes since at least March 19, 2026.

257. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL § 740, Plaintiffs are entitled to any economic damages suffered, including any loss of past and future earnings and other employment benefits, for which they are entitled to an award of monetary damages and other relief.

258. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of NYLL § 740, Plaintiffs are entitled to an additional civil penalty in an amount up to $10,000.00, as well as punitive damages for Defendants' malicious, willful, and wanton violations of the NYLL § 740's anti-retaliation provisions, and all other appropriate forms of relief, including compensatory, economic and/or monetary damages, attorneys' fees, costs of this action, and interest as permitted by law.

## DEMAND FOR A JURY TRIAL

259. Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Class Members and FLSA Collective Action Plaintiffs pray for the following relief:

i. Issuing an order restraining Defendants from any retaliation against Plaintiffs, Class Members and FLSA Collective Action Plaintiffs for participation in any form in this litigation;

ii. Issuing a declaratory judgment that the practices complained of in this Amended Complaint are unlawful under the FLSA, 29 U.S.C. § 201 *et seq.* and supporting regulations and the NYLL, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, and under New York common Law;

iii. Designating this action as an FLSA collective action on behalf of the Plaintiffs and FLSA Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective Action Plaintiffs apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

iv. Certifying this action a class action pursuant to Fed. R. Civ. P. 23;

v. Awarding unpaid overtime wages and an additional and equal amount as liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

vi. Awarding liquidated damages for untimely paid wages in an amount equal to the amount of the delayed wages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

vii. Awarding unpaid wages, including overtime wages, spread of hours pay, and any other forms of compensation, pursuant to the NYLL and the supporting New York State Department of Labor Regulations, plus an additional and equal amount as liquidated damages;

viii. With respect to Plaintiff Rodriguez only, awarding any unlawfully deducted wages from his earned wages, pursuant to the NYLL and Department of Labor Regulations, plus an amount equal to liquidated damages;

ix. Awarding damages and/or interest pursuant to NYLL §§ 191, 198;

x. Awarding damages pursuant to NYLL §§ 195(1), 195(3), 198;

xi. With respect to Plaintiff Rodriguez only, awarding damages relating to the unlawful violation of the New York common law with respect to unjust enrichment;

xii. With respect to Plaintiffs only, awarding all damages recoverable due to Defendants' unlawful retaliatory conduct, including but not limited to, any compensatory damages, damages for emotional pain, suffering, humiliation and embarrassment, out of pocket costs and expenses, and liquidated damages;

xiii. With respect to Plaintiffs only, awarding an additional civil penalty in an amount up to $10,000.00 under NYLL § 740;

xiv. With respect to Plaintiffs only, awarding punitive damages as permitted by law;

xv. Awarding pre- and post-judgment interest as permitted by law;

xvi. Awarding attorneys' fees incurred in prosecuting this action;

xvii. Awarding all costs and expenses incurred in prosecuting this action; and

xviii. Granting such other and further relief as this Court deems just and proper.

Dated: Hauppauge, New York
June 26, 2026

ROMERO LAW GROUP PLLC
*Attorneys and Co-Counsel for Plaintiffs*
490 Wheeler Road, Suite 277
Hauppauge, New York 11788
Tel.: (631) 257-5588

By: ______________________________
DAVID D. BARNHORN, ESQ.